UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PANASONIC CORPORATION,<br><br>Defendant. | Case:2:13-cr-20540<br>Judge: Murphy, Stephen J.<br>MJ: Randon, Mark A.<br>Filed: 07-18-2013 At 01:08 PM<br>INFO USA V. PANASONIC CORPORATION ( DA)<br><br>Count I:     15 U.S.C. § 1<br>Count II:    15 U.S.C. § 1<br>Count III:   15 U.S.C. § 1 |

## INFORMATION

### COUNT ONE
### CONSPIRACY TO RESTRAIN TRADE
### (15 U.S.C. § 1)

THE UNITED STATES, ACTING THROUGH ITS ATTORNEYS, CHARGES:

**Defendant and Co-Conspirators**

1.      Panasonic Corporation ("Defendant") is a corporation organized and existing under the laws of Japan, with its principal place of business in Osaka, Japan. During the period covered by this Count, Defendant was engaged in the business of manufacturing and selling steering wheel switches, turn switches, wiper switches, combination switches, and door courtesy switches ("the five switches") to Toyota Motor Corporation ("TMC") and Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") (collectively, "Toyota"), for installation in vehicles manufactured and sold in the United States and elsewhere.

1

2. Another corporation and individuals, not made defendants in this Count, participated as co-conspirators in the offense charged in this Count and performed acts and made statements in furtherance of it.

3. Whenever in this Count reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

**Background of the Offense**

During the period covered by this Count:

4. Defendant and its co-conspirators supplied steering wheel switches, turn switches, wiper switches, combination switches, and door courtesy switches to Toyota for installation in vehicles manufactured and sold in the United States and elsewhere. Defendant and its co-conspirators sold the five switches (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) in Japan for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) in Japan for installation in vehicles manufactured in Japan, some of which were then exported to and sold in the United States.

5. A steering wheel switch is a switch installed in the steering wheel of a vehicle, which the driver of the vehicle operates to control various functions within the vehicle.

A turn switch is a lever switch installed behind the steering wheel of a vehicle, which the driver of the vehicle operates to signal a left or right turn and control hi/lo beam selection.

A wiper switch is a lever switch installed behind the steering wheel of a vehicle, which the driver of the vehicle uses to activate the vehicle's windshield wipers.

A combination switch is a combination of the turn and wiper switches as one unit, sold together as a pair.

A door courtesy switch is a switch installed in the door frame of a vehicle that activates the courtesy lamp inside the vehicle when the vehicle door opens.

When purchasing any of the five switches, Toyota issues Requests for Quotation ("RFQs") to automotive parts suppliers on a model-by-model basis for model-specific parts. Automotive parts suppliers submit quotations, or bids, to Toyota in response to RFQs, and Toyota awards the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years. Typically, the bidding process for a particular model begins approximately three years prior to the start of production. Toyota procures parts for U.S.-manufactured vehicles both in Japan and the United States.

## Conspiracy to Restrain Trade

6.  From at least as early as September 2003 and continuing until at least February 2010, the exact dates being unknown to the United States, Defendant and its co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, the five switches sold to Toyota in the United States and elsewhere. The combination and conspiracy engaged in by Defendant and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

7.  The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendant and its co-conspirators, the substantial

3

terms of which were to rig bids for, and to fix, stabilize, and maintain the prices of, the five switches sold to Toyota in the United States and elsewhere.

### Manner and Means of the Conspiracy

8. For purposes of forming and carrying out the charged combination and conspiracy, Defendant and its co-conspirators did those things that they combined and conspired to do, including, among other things:

   a. participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations to be submitted to Toyota in the United States and elsewhere;

   b. agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to Toyota in the United States and elsewhere;

   c. agreeing, during those meetings, conversations, and communications, to allocate the supply of the five switches sold to Toyota in the United States and elsewhere on a model-by-model basis;

   d. agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by Toyota in the United States and elsewhere;

   e. submitting bids, price quotations, and price adjustments to Toyota in the United States and elsewhere in accordance with the agreements reached;

   f. selling the five switches to Toyota in the United States and elsewhere at collusive and noncompetitive prices;

   g. accepting payment for the five switches sold to Toyota in the United States and elsewhere at collusive and noncompetitive prices;

      h.      engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

      i.      employing measures to keep their conduct secret, including using code names and choosing meeting places and times to avoid detection.

### Trade and Commerce

9. During the period covered by this Count, Defendant and its co-conspirators sold to Toyota in the United States and elsewhere substantial quantities of the five switches manufactured in the United States and shipped from outside the United States and from other states in a continuous and uninterrupted flow of interstate and foreign trade and commerce. In addition, substantial quantities of equipment and supplies necessary to the production and distribution of the five switches by Defendant and its co-conspirators, as well as payments for the five switches sold by Defendant and its co-conspirators, traveled in interstate and foreign trade and commerce. The business activities of Defendant and its co-conspirators in connection with the production and sale of the five switches that were the subject of the charged conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

### Jurisdiction and Venue

10. The combination and conspiracy charged in this Count was carried out, at least in part, in the Eastern District of Michigan within the five years preceding the filing of this Information.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

## COUNT TWO
## CONSPIRACY TO RESTRAIN TRADE
## (15 U.S.C. § 1)

THE UNITED STATES, ACTING THROUGH ITS ATTORNEYS, CHARGES:

11. Panasonic Corporation ("Defendant") is a corporation organized and existing under the laws of Japan, with its principal place of business in Osaka, Japan. During the period covered by this Count, Defendant was engaged in the business of manufacturing and selling steering angle sensors ("SAS") to Toyota Motor Corporation and Toyota Motor Engineering & Manufacturing North America, Inc. (collectively, "Toyota"), for installation in vehicles manufactured and sold in the United States and elsewhere.

12. Another corporation and individuals, not made defendants in this Count, participated as co-conspirators in the offense charged in this Count and performed acts and made statements in furtherance of it.

13. Whenever in this Count reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

**Background of the Offense**

During the period covered by this Count:

14. Defendant and its co-conspirators supplied SAS to Toyota for installation in vehicles manufactured and sold in the United States and elsewhere. Defendant and its co-conspirators sold SAS (a) in the United States for installation in vehicles manufactured and sold in the United States, and (b) in Japan for export to the United States and installation in vehicles manufactured and sold in the United States.

6

15. A steering angle sensor is installed on the steering column of a vehicle and may be connected to and part of a combination switch; it detects the angle of the vehicle's steer and sends signals to a vehicle computer which in turn controls for vehicle stability during turns.

When purchasing SAS, Toyota issues Requests for Quotation ("RFQs") to automotive parts suppliers on a model-by-model basis for model-specific parts. Automotive parts suppliers submit quotations, or bids, to Toyota in response to RFQs, and Toyota awards the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years. Typically, the bidding process for a particular model begins approximately three years prior to the start of production. Toyota procures parts for U.S.-manufactured vehicles both in Japan and the United States.

**Conspiracy to Restrain Trade**

16. From at least as early as September 2003 and continuing until at least February 2010, the exact dates being unknown to the United States, Defendant and its co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, SAS sold to Toyota in the United States and elsewhere. The combination and conspiracy engaged in by Defendant and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

17. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendant and its co-conspirators, the substantial terms of which were to rig bids for, and to fix, stabilize, and maintain the prices of, SAS sold to Toyota in the United States and elsewhere.

## Manner and Means of the Conspiracy

18.   For purposes of forming and carrying out the charged combination and conspiracy, Defendant and its co-conspirators did those things that they combined and conspired to do, including, among other things:

   a.   participating in meetings, conversations, and communications in the United States and Japan to discuss the bids and price quotations to be submitted to Toyota in the United States and elsewhere;

   b.   agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to Toyota in the United States and elsewhere;

   c.   agreeing, during those meetings, conversations, and communications, to allocate the supply of SAS sold to Toyota in the United States and elsewhere on a model-by-model basis;

   d.   agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by Toyota in the United States and elsewhere;

   e.   submitting bids, price quotations, and price adjustments to Toyota in the United States and elsewhere in accordance with the agreements reached;

   f.   selling SAS to Toyota in the United States and elsewhere at collusive and noncompetitive prices;

   g.   accepting payment for SAS sold to Toyota in the United States and elsewhere at collusive and noncompetitive prices;

   h.   engaging in meetings, conversations, and communications in the United States and elsewhere for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

8

        i.        employing measures to keep their conduct secret, including using code names and choosing meeting places and times to avoid detection.

### Trade and Commerce

19. During the period covered by this Count, Defendant and its co-conspirators sold to Toyota in the United States and elsewhere substantial quantities of SAS manufactured in the United States and shipped from outside the United States and from other states in a continuous and uninterrupted flow of interstate and foreign trade and commerce. In addition, substantial quantities of equipment and supplies necessary to the production and distribution of SAS by Defendant and its co-conspirators, as well as payments for SAS sold by Defendant and its co-conspirators, traveled in interstate and foreign trade and commerce. The business activities of Defendant and its co-conspirators in connection with the production and sale of SAS that were the subject of the charged conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

### Jurisdiction and Venue

20. The combination and conspiracy charged in this Count was carried out, at least in part, in the Eastern District of Michigan within the five years preceding the filing of this Information.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

### COUNT THREE
### CONSPIRACY TO RESTRAIN TRADE
### (15 U.S.C. § 1)

THE UNITED STATES, ACTING THROUGH ITS ATTORNEYS, CHARGES:

21. Panasonic Corporation ("Defendant") is a corporation organized and existing under the laws of Japan, with its principal place of business in Osaka, Japan. During the period

covered by this Count, Defendant was engaged in the business of supplying automotive high intensity discharge ("HID") ballasts to or for Honda Motor Company, Ltd. and American Honda Motor Company, Inc. (collectively "Honda"), Mazda Motor Corporation and Mazda Motor of America, Inc. (collectively "Mazda"), Nissan Motor Company Ltd. and Nissan North America, Inc. (collectively, "Nissan") for installation in vehicles manufactured and sold in the United States and elsewhere.

22.     Other corporations and individuals, not made defendants in this Count, participated as co-conspirators in the offense charged in this Count and performed acts and made statements in furtherance of it.

23.     Whenever in this Count reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

**Background of the Offense**

During the period covered by this Count:

24.     Defendant and its co-conspirators supplied automotive HID ballasts to or for Honda, Mazda, and Nissan for installation in vehicles manufactured and sold in the United States and elsewhere. Defendant and its co-conspirators sold and/or supplied automotive HID ballasts (a) in the United States for installation in vehicles manufactured and sold in the United States, (b) in Japan for export to the United States and installation in vehicles manufactured and sold in the United States, and (c) in Japan for installation in vehicles manufactured in Japan, some of which were then exported to and sold in the United States.

25.     An automotive HID ballast is an electrical device that limits the amount of electrical current flowing to an HID headlamp, which would otherwise rise to destructive levels due to the HID headlamp's negative resistance.

When purchasing automotive HID ballasts, Honda, Mazda, and Nissan issue Requests for Quotation ("RFQs") to automotive parts suppliers on a model-by-model basis for model-specific parts. Automotive parts suppliers submit quotations, or bids, to Honda, Mazda, and Nissan in response to RFQs, and Honda, Mazda, and Nissan award the business to the selected automotive parts supplier for the lifespan of the model, which is usually four to six years. Typically, the bidding process for a particular model begins approximately three years prior to the start of production. Honda, Mazda, and Nissan procure parts for U.S.-manufactured vehicles both in Japan and the United States.

**Conspiracy to Restrain Trade**

26.     From at least as early as July 1998 and continuing until at least February 2010, the exact dates being unknown to the United States, Defendant and its co-conspirators participated in a combination and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to rig bids for, and to fix, stabilize, and maintain the prices of, automotive HID ballasts sold to Honda, Mazda, and Nissan in the United States and elsewhere. The combination and conspiracy engaged in by Defendant and its co-conspirators was in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1.

27.     The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendant and its co-conspirators, the substantial

terms of which were to rig bids for, and to fix, stabilize, and maintain the prices of, automotive HID Ballasts sold to Honda, Mazda, and Nissan in the United States and elsewhere.

## Manner and Means of the Conspiracy

28. For purposes of forming and carrying out the charged combination and conspiracy, Defendant and its co-conspirators did those things that they combined and conspired to do, including, among other things:

    a. participating in meetings, conversations, and communications in Japan to discuss the bids and price quotations to be submitted to Honda, Mazda, and Nissan in the United States and elsewhere;

    b. agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to Honda, Mazda, and Nissan in Japan;

    c. agreeing, during those meetings, conversations, and communications, to allocate the supply of automotive HID ballasts sold to automobile manufacturers in the United States and elsewhere on a model-by-model basis;

    d. agreeing, during those meetings, conversations, and communications, to coordinate price adjustments requested by Honda, Mazda, and Nissan in Japan;

    e. submitting bids, price quotations, and price adjustments to Honda, Mazda, and Nissan in Japan in accordance with the agreements reached;

    f. selling automotive HID ballasts to Honda, Mazda, and Nissan in the United States and elsewhere at collusive and noncompetitive prices;

    g. accepting payment for automotive HID ballasts sold to Honda, Mazda, and Nissan in the United States and elsewhere at collusive and noncompetitive prices;

h. engaging in meetings, conversations, and communications in Japan for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme; and

i. employing measures to keep their conduct secret, including using code names and choosing meeting places and times to avoid detection.

### Trade and Commerce

29. During the period covered by this Count, Defendant and its co-conspirators sold to Honda, Mazda, and Nissan in the United States and elsewhere substantial quantities of automotive HID ballasts manufactured in Japan and shipped into the United States and from other states in a continuous and uninterrupted flow of interstate and foreign trade and commerce. In addition, substantial quantities of equipment and supplies necessary to the production and distribution of automotive HID ballasts by Defendant and its co-conspirators, as well as payments for automotive HID ballasts sold by Defendant and its co-conspirators, traveled in interstate and foreign trade and commerce. The business activities of Defendant and its co-conspirators in connection with the production and sale of automotive HID ballasts that were the subject of the charged conspiracy were within the flow of, and substantially affected, interstate and foreign trade and commerce.

### Jurisdiction and Venue

30. The combination and conspiracy charged in this Count was carried out, at least in part, in the Eastern District of Michigan within the five years preceding the filing of this Information.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

Dated: July 15, 2013

s/Scott D. Hammond
Scott D. Hammond
Deputy Assistant Attorney General
Antitrust Division
United States Department of Justice

s/Marvin Price
Marvin Price
Director of Criminal Enforcement
Antitrust Division
United States Department of Justice

s/Lisa M. Phelan
Lisa M. Phelan
Chief, National Criminal Enforcement
Section

s/Kathryn Hellings
Kathryn Hellings
Matthew W. Lunder
Philip Giordano
Eric Meiring
Diana Kane
Trial Attorneys
United States Department of Justice
Antitrust Division
450 Fifth Street, NW
Suite 11300
Washington, D.C. 20530
Tel.: (202) 307-6694

Companion Case information MUST be completed

| United States District Court<br>Eastern District of Michigan | Criminal Case Cov |
|---|---|

Case:2:13-cr-20540
Judge: Murphy, Stephen J.
MJ: Randon, Mark A.
Filed: 07-18-2013 At 01:08 PM
INFO USA V. PANASONIC CORPORATION ( DA)

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to com

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008  [ ]

| **Companion Case Information** | Companion Case Number: 12-20063 |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: Steeh |
| ☒ Yes          ☐ No | AUSA's Initials: _____ |

Case Title: USA v. Panasonic Corporation

County where offense occurred : Wayne

Check One:      ☒ Felony          ☐ Misdemeanor          ☐ Petty

____Indictment/ ✓ Information --- **no prior complaint.**
____Indictment/____Information --- **based upon prior complaint** [Case number:
____Indictment/____Information --- **based upon LCrR 57.10 (d)** [Complete Superseding section below].

## Superseding Case Information

Superseding to Case No: _____        Judge: _____

☐  Original case was terminated; no additional charges or defendants.
☐  Corrects errors; no additional charges or defendants.
☐  Involves, for plea purposes, different charges or adds counts.
☐  Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

July 17, 2013
Date

Kathryn Hellings
Trial Attorney, Antitrust Division, DOJ
450 Fifth Street, N.W., Suite 11300
Washington, DC 20530
Phone:  (202) 307-6694
Fax: (202) 514-6525
E-Mail address: katie.hellings@usdoj.gov
Attorney Bar #:

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09